UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO.: 2:25-cr-236-SPC-NPM

RUDY PEREZ

---

## OPINION AND ORDER

Before the Court are Defendant Rudy Perez's Motion to Suppress (Doc. 37) and the Government's response (Doc. 42). On March 18, 2026, the Court held an evidentiary hearing on the motion, at which Defendant was present and represented by counsel. (Doc. 60). For the below reasons, the Court denies the motion.

### Background

This case involves child pornography and the solicitation of minors to engage in sexual acts. On January 19, 2025, Defendant sent several private messages to a minor through Instagram's direct messaging feature, requesting naked pictures and urging the minor to engage in sexual acts. Instagram was monitoring the chat and discovered the messages. So on January 24, 2025, Instagram Inc. and Facebook Reporting[1] reported the incident to the National

---

[1] Instagram and Facebook are both subsidiaries of Meta Platforms, Inc. The Court sometimes uses these entities interchangeably in this Order.

Center for Missing and Exploited Children ("NCMEC") as required by federal law.  NCMEC then generated a CyberTipLine Report ("CyberTip") using information provided by Facebook and Instagram.  (Gov. Ex. 1).

According to the CyberTip, Instagram and Facebook reported the incident type as "Online Enticement of Children for Sexual Acts," and NCMEC similarly classified it as "Online Enticement-PreTravel."  (*Id*. at 3, 11).  The report identified the recipient of Defendant's messages as a fifteen-year-old, and it included excerpts of the offending messages.  The CyberTip added that "[a]ll content, including conversations and images, referenced in this report have been reviewed by a person at Facebook."  (*Id*. at 6).  And Mariaveronica Rivas, a custodian of records from Meta Platforms, Inc. and a team analyst on Meta's law enforcement response team, testified and submitted two declarations confirming that two humans reviewed the offending messages before they were sent to NCMEC.  (Gov. Ex. 5 ¶ 8; Gov Ex. 8 ¶ 4).  Therefore, at least one individual from Facebook, Instagram, or Meta reviewed the messages before they were sent to NCMEC.

After NCMEC completed its review, it forwarded the CyberTip to Lee County Sheriff's Office Detective Summer Leonard. She reviewed the incriminating messages included in the 2025 CyberTip and then began a background check on Defendant using the report's information.

While conducting her investigation into the 2025 CyberTip, Detective Leonard discovered a prior CyberTip from 2022 regarding Defendant sending a child pornography video via direct message on Instagram. (Gov. Ex. 2). The 2022 CyberTip revealed Instagram reported the incident as "Child Pornography (possession, manufacture, and distribution)." (*Id.* at 3). The report included the video file and categorized it as "CP (Unconfirmed)." (*Id.* at 5). The report further indicated that no individual from Instagram or NCMEC had reviewed the video to confirm it contained child pornography. Rather, Instagram reported the video file because it had been "hash matched" by an algorithm to content previously determined by a human to constitute child pornography.[2] Instagram assigned the video a "B1" categorization, which is an industry classification label indicating the video contained a pubescent minor engaged in a sex act. So NCMEC classified the incident as "Apparent Child Pornography (Unconfirmed)" and further noted "Files Not Reviewed by NCMEC, Hash Match[.]"). (*Id.* at 7).

---

[2] A hash value is a unique string of letters and numbers that reflects the content of an image or video file and is created using a common algorithm. The series of letters and numbers are a file's digital fingerprint. Generally, electronic service providers, like Instagram and Facebook, assign a hash value to a known image of child pornography. It is known to be child pornography because it was, at one time, reviewed by an individual and recognized as child pornography. The electronic service provider then scans its services for files with the same value. When they get a "match," they know the scanned file is a duplicate of the child pornography image without opening and viewing the file. (Gov. Ex. 5 ¶¶ 3–7). That's what happened with the 2022 child pornography video.

NCMEC forwarded the 2022 CyberTip to Lee County Sheriff's Office. Detective Cecil Fitch, Jr. spearheaded the investigation. As part of his investigation, he reviewed the video file and provided a brief description, noting it depicted a pubescent female with her breasts, anus, and vagina exposed. Ultimately, Detective Fitch's investigation fell flat because he could not locate Defendant.

On May 15, 2025, Detective Leonard applied for a warrant to search the contents of Defendant's Instagram account. Her supporting affidavit stated she was investigating a violation of Florida Statute § 847.0135(3)(a), which prohibits soliciting a minor for unlawful sexual conduct using computer services or devices. In support, she relied on the 2025 CyberTip and the offending messages as evidence. Additionally, as background information, she noted the 2022 CyberTip referencing child pornography and included verbatim Detective Fitch's description of the video's contents.[3] A state court judge granted the search warrant. (Gov. Ex. 3a).

After executing the search warrant, Detective Leonard uncovered the soliciting messages referenced in the 2025 CyberTip. She also identified evidence establishing Defendant had enticed and solicited sexually explicit images from numerous Instagram accountholders who identified themselves

---

[3] Detective Leonard never viewed the video file associated with the 2022 CyberTip as part of her investigation into the 2025 CyberTip; she relied on Detective Fitch's description.

4

as children.   And several minor children sent sexually explicit images to Defendant.  Defendant also sent obscene images of himself to minors.

Given this uncovered evidence, Detective Leonard expanded her investigation from enticement of a minor to also include receipt and possession of child pornography.  She requested a second search warrant, this time to search Defendant's residence, including his computer's hard drive.  A federal magistrate judge signed the warrant.  (Gov. Ex. 3b).

As a result of the 2025 CyberTip, the search of Defendant's Instagram account and residence, along with his subsequent confession, Defendant was indicted for coercion and enticement of a minor to engage in sexual activity, receipt and possession of child pornography, and transfer of obscene matter to a minor.  (Doc. 23).

Defendant now seeks protection under the Fourth Amendment.   He argues that law enforcement's review of the child pornography video and messages in the CyberTips without a warrant violated the Fourth Amendment. Anticipating the Government's response, he argues the warrantless search did not comply with the "private search doctrine" because law enforcement's review of the offending messages and child pornography video exceeded the scope of the search conducted by Instagram/Facebook.  So he asks the Court to suppress all evidence derived from the 2022 and 2025 CyberTips and any fruits

of that evidence—such as evidence obtained from the search warrants and Defendant's oral statements.  (Doc. 37).

## Legal Standard

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government.  U.S. CONST. amend. IV.  The government usually needs a warrant before it may search a person or their effects.  A warrantless search is invalid unless an exception applies to the warrant requirement.  *See Katz v. United States*, 389 U.S. 347, 357 (1967).  Here, the Government relies on the private search doctrine exception.  (Doc. 42).

The Fourth Amendment protects individuals from government actors, not private ones.  A private party can therefore conduct a search that would be unconstitutional if done by the government.  This principle forms the basis of the private search doctrine.  When a private party acts on its own accord and provides evidence against a defendant to the government, the police need not "avert their eyes."  *Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971).  So "a prior private search excuses the government from getting a warrant to repeat the search but only when the government's search does not exceed the scope of the private one." *United States v. Montijo*, No. 2:21-CR-75-SPC-NPM, 2022 WL 93535, at *3 (M.D. Fla. Jan. 10, 2022) (citing *Walter v. United States*, 447 U.S. 649 (1980) and *United States v. Jacobsen*, 466 U.S. 109 (1984)).

6

## Analysis

Defendant's argument turns on whether law enforcement's warrantless search of the messages in the 2025 CyberTip and the child pornography video in the 2022 CyberTip exceeded the scope of Instagram and Facebook's search. The Court addresses each CyberTip in turn.

### *2025 CyberTip*

Defendant argues that Detective Leonard's initial search—*i.e.*, reviewing the direct message excerpts included in the 2025 CyberTip—exceeded Instagram's search. But this is untrue because the CyberTip and Rivas' testimony indicate at least one individual from Instagram, Facebook, or Meta reviewed the messages before reporting them to NCMEC. Detective Leonard only examined the messages that had been previously reviewed by someone from these private entities. So her search did not exceed Instagram's and thus did not violate the Fourth Amendment.

Defendant makes much of the fact that the identity of the individual(s) from Instagram who reviewed the messages is unknown. But this is immaterial because Instagram, its employees, and its contractors are private persons. "So who and how [Instagram] searches its programs do not lessen the private search doctrine's application here." *Montijo*, 2022 WL 93535, at *5; *see also United States v. Brillhart*, No. 2:22-CR-53-SPC-NPM, 2023 WL 3304278, at *5 (M.D. Fla. May 7, 2023) (same). Defendant also focuses on the lack of

7

clarity as to whether Instagram, Facebook, or Meta reviewed the offending messages. But this argument fails for the same reason. It makes no difference who initially identified and reviewed the messages so long as it was a private person. Such is the case here.

Defendant also argues that the Government cannot confirm the recipient of his messages was a minor because her age is unverified. But this is another red herring. The relevant standard here is probable cause. Probable cause does not require the Government to establish the victim's age so long as there is a reasonable basis to believe she was a minor. *See United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (explaining "probable cause does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction" only "a reasonable belief that the suspect had committed or was committing a crime" (citation and internal quotation marks omitted)). Here, the account Defendant messaged was registered to a fifteen-year-old. What's more, within his messages, Defendant referred to the recipient as "a naughty 12yr old." (Gov. Ex. 1). Whether she was twelve or fifteen, the evidence suggests the recipient was a minor. Therefore, the Government had probable cause to believe Defendant was soliciting a minor.

### 2022 CyberTip

Defendant questions law enforcement's search of the 2022 CyberTip as well. Back in 2022, Detective Fitch reviewed the child pornography video file

and described its contents.  Detective Leonard referenced the 2022 CyberTip and Detective Fitch's description of the video in her search warrant affidavit. So the focus here is whether Detective Fitch's search exceeded Instagram's.

Detective Fitch did not violate the Fourth Amendment when he reviewed the video during his 2022 investigation.  The CyberTip indicated Instagram reported the video because it was "hash matched" to content an individual previously reviewed, and it assigned the video a B1 categorization—one depicting a pubescent minor engaged in a sex act.  This Court has held that the private search doctrine applies when a law enforcement officer reviews files hash matched as containing child pornography by an electronic service provider, such as Instagram or Facebook.  *See Montijo*, 2022 WL 93535, at *5 (finding the private search doctrine applied when officer reviewed video that Facebook's hash technology labeled A1, meaning a prepubescent minor engaged in a sex act); *see also United States v. Ambrose*, No. 23-CR-13-KKM-CPT, 2025 WL 3153495, at *11 (M.D. Fla. Nov. 12, 2025) (concluding "the government's review of the files did not exceed the private searches conducted by hash matching").

Defendant tries casting doubt on the reasonableness of Detective Fitch's search by observing the uncertainty that the video contained child pornography.  For instance, in the 2022 CyberTip, NCMEC categorized the video file as "CP (*Unconfirmed*)" and classified the incident as "*Apparent* Child

9

Pornography (*Unconfirmed*)." (Gov. Ex. 2 at 5, 7 (emphasis added)). Because there was no confirmation the video contained anything illegal, Defendant believes Detective Fitch violated the Fourth Amendment by nevertheless reviewing it. But the mere possibility that the algorithm could have incorrectly identified the video as one containing child pornography (which it did not) "does not change the fact that the algorithm has *searched* the file." *Ambrose*, 2025 WL 3153495, at *10; *see also United States v. Miller*, 982 F.3d 412, 431 (6th Cir. 2020) ("Just because a private party turns out to be wrong about the legality of an item that the party discloses to police does not mean that the police violate the Fourth Amendment when they reexamine the item."). And Defendant never argued, nor did the evidence suggest, that Instagram's algorithm produced false positives at such an alarming rate as to render the search a farce. *See Ambrose*, 2025 WL 3153495, at *10 (observing the defendant "never argued, nor did the evidence that he presented allow such a conclusion, that the algorithms at issue produced such an egregious mismatch of identification to render the 'search' a farce").

That's not all. Even assuming Detective Fitch unlawfully reviewed the video, it makes no difference because Detective Leonard had probable cause for her initial search warrant on the 2025 Cyber tip, independent of the video's contents described in the 2022 Cyber tip. Detective Leonard's search warrant affidavit for Defendant's Instagram account was premised on a violation of

10

Florida's law against soliciting a minor for unlawful sexual conduct using computer services or devices. Consistent with this suspected violation, Detective Leonard's affidavit relied on Defendant's Instagram messages to a minor identified in the 2025 CyberTip. These messages alone supplied probable cause to search Defendant's Instagram account for violating the cited Florida law. So even without the 2022 CyberTip and accompanying video, Detective Leonard would have had probable cause for her search warrant. *See United States v. Lockett*, 533 F. App'x 957, 967 (11th Cir. 2013) ("[E]ven if the Affidavit is considered without the evidence observed during the walk-through, it still establishes probable cause under the totality of the circumstances."). And any incriminating evidence discovered pursuant to that search warrant leading to additional charges, such as evidence of child pornography, was fair game. *See United States v. Miranda*, 325 F. App'x 858, 860 (11th Cir. 2009) (evidence of child pornography discovered while searching the defendant's hard drive pursuant to a search warrant for evidence of counterfeiting crimes was admissible because it was in plain view).

## Conclusion

Detectives Leonard's and Fitch's warrantless searches of Defendant's Instagram messages did not violate the Fourth Amendment. Thus, all

subsequently discovered evidence pursuant to the search warrants and Defendant's oral statements are not fruit of the poisonous tree.[4]

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Suppress (Doc. 37) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on April 2, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:   Counsel of Record

---

[4] Given this conclusion, the Court need not address whether the good-faith exception applies or whether Defendant had a reasonable expectation of privacy in his messages, which are issues the parties brief. (Docs. 37, 42). That said, the good-faith exception would apply here as the Court has found in other similar instances. *See Montijo*, 2022 WL 93535, at *8 (finding the officer "reasonably relied on Facebook's and NCMEC's statutory duty to report apparent child pornography and provide the incriminating evidence to watch the Video").